IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

JAMES R. DOUGLAS,

        Petitioner,

v.                                                                                        Civil Action No. 2:11cv48
                                                                                      (Judge Bailey)

TIMOTHY STEWART,

        Respondent.

## REPORT AND RECOMMENDATION

This case is before the undersigned for a report and recommendation on the petitioner's Application for Habeas Corpus Pursuant to 28 U.S.C. § 2241, the respondent's Motion to Dismiss or, in the alternative, Motion for Summary Judgment, and the petitioner's opposition.

### I. Factual and Procedural Background

On October 24, 2002, the petitioner was sentenced in the United States District Court for the Western District of Virginia to a sixty (60) month sentence to be followed by a sixty (60) month term of supervised release for violating 21 U.S.C. § 846, "Conspiracy to Distribute Crack Cocaine." (Doc. 10-3, p. 4). The petitioner satisfied his term of imprisonment via good conduct time and was released on December 19, 2005, after serving the last four months of his sentence on home confinement. (Doc. 10-4, p. 1). On November 12, 2009, the United States District Court for the Western District of Virginia revoked the petitioner's supervised release and sentenced him to a term of thirty-six (36) months to be followed by a twelve (12) month term of supervised release. (Doc. 10-5, pp. 1-2).[1] The petitioner's projected release date is June 1, 2012 via good conduct time

---

[1] In its Judgment Order, the Court found that the petitioner had violated the terms of his supervised release by (1) testing positive for the use of marijuana and (2) selling cocaine to

release. (Doc. 10-3, p. 1). The petitioner is currently incarcerated at the Federal Correctional Institution located in Morgantown, West Virginia ("FCI Morgantown"). The petitioner enrolled in the Residential Drug Abuse Program ("RDAP") at FCI Morgantown on November 9, 2010.[2] On June 10, 2010, prior to his enrollment, the Designation and Sentence Computation Center ("DSCC") reviewed the petitioner's offense to determine his eligibility for early release pursuant to 18 U.S.C. § 3621(e) and 28 C.F.R. § 550.55. The DSCC concluded that the petitioner was ineligible for early release because a 2-point Specific Offense Characteristic enhancement for possession of a firearm was recommended in the Presentence Investigation Report and adopted by the sentencing court in its Statement of Reasons in connection with the petitioner's current offense of Conspiracy to Distribute "Crack" Cocaine and Possession with Intent to Distribute. (Doc. 10-11). The petitioner has exhausted his administrative remedies in an effort to convince the BOP that he is not categorically excluded for early release consideration because his "current offense" was for violation of the terms of his supervised release and did not involve a weapon or a weapon enhancement.

On March 30, 2011, Rebecca Lewis, the petitioner's Case Manager, conducted a 5-factor review pursuant to 18 U.S.C. § 3621(b) to determine the petitioner's transitional needs and to make a recommendation on RRC placement. Based on that review, Ms. Lewis recommended that he be placed in an RRC on December 6, 2011, which is approximately 180 days prior to his anticipated release date. (Doc. 10-6, p. 1).

---

confidential informants on four separate occasions which led to his arrest and the discovery of marijuana and suspected illegal pills. (Doc. 1-5, p. 1).

[2]At the time the response was filed in this matter, it was anticipated that he would complete the program on August 12, 2011.

## II. Contentions of the Parties

**A. The Petition**

Although conceding that case law establishes that a supervised release violation is not a new proceeding but a continuation of the original prosecution, the petitioner argues that the Bureau of Prisons ("BOP") abused its discretion by denying early release to him even though he has served the sentence for the initial disqualifying offense. The petitioner contends that his supervised release violation should be considered his current offense. The petitioner also argues that by denying him early release for a nonviolent offense, the BOP is deterring others from entering treatment and is frustrating the intent of congress.

**B. The Respondent's Motion**

In the motion to dismiss, the respondent asserts that the petition should be dismissed for the following reasons:

1. The BOP's interpretation of "Current Offense Conviction" was not "plainly erroneous or inconsistent with the regulation;

2. Section 3625 of Title 18 precludes judicial review of the BOP's substantive decision regarding the petitioner's eligibility to participate in RDAP;

3. The petitioner has no constitutional right to early release for successful completion of RDAP;

4. The BOP did not act beyond its statutory authority in denying the petitioner early release; and

5. The BOP properly exercised its jurisdiction in determining that a 180 day RRC placement is sufficient for the petitioner's transitional needs.

## C. The Petitioner's Response

In his response, the petitioner maintains that there is a genuine issue whether the BOP's denial of early release was an abuse of discretion, and therefore, judicial review is not precluded by 18 U.S.C. § 3625. The petitioner also argues that the nexus between his original offense, which included the two-point firearm enhancement, and his current incarceration was broken by the intervening sentence served for his supervised release violation. The petitioner also argues that the BOP abused its discretion in determining that a 180-day RRC placement is sufficient for his transitional needs.

## III. Standard of Review

### A. Motion to Dismiss

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir.1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir.1993); see also Martin, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that

the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." Conley, 355 U.S. at 45-46. In Twombly, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Conley, 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," id. (citations omitted), to one that is "plausible on its face," id. at 570, rather than merely "conceivable." Id. Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I.DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir.2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir.2002); Iodice v. United States, 289 F.3d 279, 281 (4th Cir.2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in Ashcroft v. Iqbal, where it held that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. Id.

**B. Motion for Summary Judgment**

Under the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admission on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying the standard for summary judgment, the Court must review all the evidence "in the light most favorable to the

5

nonmoving party." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The Court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In Celotex, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. 477 U.S. at 323. Once "the moving party has carried its burden under Rule 56, the opponent must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Electric Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The nonmoving party must present specific facts showing the existence of a genuine issue for trial. Id. This means that the "party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 256. The "mere existence of a scintilla of evidence" favoring the non-moving party will not prevent the entry of summary judgment. Id. at 248. Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita, 475 U.S. at 587 (citation omitted).

### IV. Analysis

**A. RDAP Historical Background**

Pursuant to the Crime Control Act of 1990, Congress required the BOP to "make available appropriate substance abuse treatment for each prisoner the Bureau determines has a treatable condition of substance addiction or abuse." 18 U.S.C. § 3621(b). In 1994, Congress authorized the

6

BOP to reduce by up to one year the sentence of "a prisoner convicted of a nonviolent offense" who successfully completes a treatment program. 18 U.S.C. § 3621(e)(2)(B);[3] Pelissero v. Thompson, 170 F.3d 442, 443-444 (4th Cir. 1999).

Congress delegated to the BOP authority to administer its drug abuse programs, see 28 C.F.R. § 550.56, and gave the BOP the discretion to determine which prisoners may participate in RDAP and which prisoners are eligible for sentence reductions. Lopez v. Davis, 531 U.S. 230 (2001).

However, Congress did not define the term "nonviolent offense" used in § 3621(e)(2)(B). Consequently, the BOP adopted a regulation in May 1995, which defined "'nonviolent offense' as a converse of 'a crime of violence,'" and "excluded from eligibility for early release under § 3621(e)(2)(B) those inmates whose 'current offense is determined to be a crime of violence' as set forth in 18 U.S.C. §924(c)(3)." Pelissero, 170 F. 3d at 444; see also 28 C.F.R. § 550.58. In addition to enacting the regulation, in May 1995, the BOP adopted Program Statement ("P.S.") § 5330.10 which reiterated Regulation 550.58. In July 1995, the BOP then adopted P.S. § 5162.02 "to further assist case management staff in deciding whether an inmate qualifies for early release under 18 U.S.C. §3621(e)(2)(B) and under implementing Regulation 550.58." P.S. § 5162.02 identified offenses that may be crimes of violence and specifically provided that an individual who is convicted of a drug offense under 21 U.S.C. § 841 and received a two-level enhancement for possession of a gun has been convicted of a crime of violence. Id.

---

[3] This section provides as follows:
The period a prisoner convicted of a nonviolent offense remains in custody after successfully completing a treatment program may be reduced by the Bureau of Prisons, but such reduction may not be more than one year from the term the prisoner must otherwise serve.

7

However, as noted by the Fourth Circuit in Pelissero, some federal courts held that possession of a firearm by a felon is not a crime of violence under 18 U.S.C. § 924(c), so the BOP adopted a revised Regulation 550.58 in October 1997. In its revised regulation, the BOP deleted the crime of violence definition from 18 U.S.C. § 924(c), but stated that at the director's discretion inmates whose current offense is a felony which involved the carrying, possession, or use of a firearm or other dangerous weapon were excluded from eligibility for early release. The BOP thereafter amended P.S. § 5330.10 to reflect this change and also adopted P.S. § 5162.04, effective October 9, 1997, which provided that "[a]n inmate will be denied the benefits of certain programs if his or her offense is either a crime of violence or an offense identified at the discretion of the Director of the Bureau of Prisons." The 1997 regulation was an interim regulation which was finalized on December 22, 2000. See 65 Fed. Reg. 80745.

## B. "Current Conviction"

In this particular case, the petitioner appears not to dispute that a current conviction with a gun enhancement disqualifies an inmate from early release eligibility. However, the petitioner argues that he has served the entirety of his sentence for his 2002 conviction, which contained the gun enhancement. Therefore, in essence, the petitioner argues that his 2002 conviction is a "prior" conviction, and the current revocation term he is serving is new conduct that was not violent and did not include a firearm. Therefore, the petitioner maintains that he is not categorically excluded from early release consideration, and the BOP abused its discretion in relying on his "prior" conviction in determining him ineligible. Moreover, the petitioner contends that exclusion of violent offenders from any early release granted by both 18 U.S.C. § 3621 and 28 C.F.R. § 550.55 was to protect society from violent offenders by ensuring that they served the entirety of their sentence. The

8

petitioner argues that he did, in fact, serve his entire mandated sentence of 60 months for his 2002 conviction, and has been duly punished for that conduct and society was protected while he was incarcerated. Therefore, the petitioner insists that the BOP abused its discretion, and thwarted the intent of Congress, when it relied on his "prior" conviction to deny him early release. Accordingly, the issue before this court is whether the BOP's interpretation of "current conviction" is lawful.

When a court reviews an agency's construction of a statute which it administers, the court must engage in a two-part analysis. First, the court must decide "whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency must give effect to the unambiguously expressed intent of Congress." Chevron U.S.A. Inc. V. NRDC, 467 U.S. 837, 842-43 (1984). However, "if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." Id. at 843. Accordingly, "if [the agency's construction of the statute] represents a reasonable accommodation of conflicting policies that were committed to the agency's care by statute, we should not disturb it unless it appears from the statute or its legislative history that the accommodation is not one that congress would have sanctioned." Id. at 845 (citing United States v. Shimer, 367 U.S. 374, 382-83 (1961)). The Supreme Court has declared the BOP to be an agency entitled to Chevron deference. Cook v. Wiley, 208 F.3d 1314, 1319 (11th Cir. 2000)(citing Reno v. Koray, 515 U.S. 50, 61 (1995)).

The petitioner contends that the BOP's application of "current conviction" to his 2002 conviction is contrary to the intent of Congress and an abuse of discretion. However, as the case law discussed below demonstrates, "current felony conviction" in the context of the Crime Control Act is unambiguous and expresses a clear congressional intent, which the BOP has followed.

9

"A term of supervised release imposed by a court, while distinct from a term of imprisonment, is, as a matter of law, a component of the overall sentence imposed upon a defendant's conviction." Munoz v. Thomas, 2010 WL 3470114 (D. Or. August 30, 2010),[4] citing United States v. Paskow, 11 F.3d 873, 881-83 (9th Cir. 1993)(supervised release is "simply part of the whole matrix of punishment which arises out of a defendant's original crimes." citing United States v. Flora, 810 F. Supp. 841, 842 (W.D. Ky. 1993)); 18 U.S.C. § 3583(a). When a defendant is returned to prison after a violation of the term of supervised release, "[i]t is the original sentence that is executed." Paskow, 11 F.3d at 881; see also Johnson v. United States, 529 U.S. 694, 700 (2000) ("postrevocation sanctions [are] part of the penalty for the initial offense"); United States v. Brown, 59 F.3d 102, 104-05 (9th Cir. 1995) ("Revocation of parole or probation is regarded as reinstatement of the sentence for the underlying crime, not as punishment for the conduct leading to the revocation."). Because "the term of supervised release, the revocation of that term, and any additional term of imprisonment imposed for violation of the supervised release are all part of the original sentence," the defendant's incarceration after revocation of supervised release is custody "by virtue of" the underlying offense. United States v. Evans, 159 F.3d 908, 913 (4th Cir. 1998);

---

[4] In Munoz, the defendant/petitioner was convicted of violating 18 U.S.C. § 924(c) (possession of a firearm during and in relation to the commission of a drug trafficking offense) and 21 U.S.C. § 844(a) (possession of methamphetamine). Munoz was sentenced to an aggregate 84 months imprisonment, to be followed by three years of supervised release. Following his release from incarceration, Munoz violated the terms of his supervised release. Thereafter, his supervised release was revoked, and the Court imposed a 21-month term of imprisonment for the release violation. Munoz enrolled in RDAP and sought early release. The BOP found him to be ineligible based on a "current" conviction for violating 18 U.S.. § 924(c). Finding no error in the BOP's legal conclusion and that the petitioner had failed to show he is in custody in violation of of the Constitution or laws of the United States, the § 2241 petition was denied.

10

see also United States v. Pynes, 5 F.3d 1139, 1140 (8th Cir. 1993).[5]Accordingly, the petitioner's supervised release violation resurrects his original conviction, not just the sentence. See e.g., United States v. Romines, 204 F.3d 1067, 1069 (11th Cir. 2000). Based on these decisions, it is clear that the BOP's interpretation of the plain meaning of its regulation is consistent with controlling law and is reasonable and enforceable.

## C. RRC Placement

On April 9, 2008, the Second Chance Act of 2007, Pub. L. No. 110-99, was enacted. It amended 18 U.S.C. § 3624 and provides that the Director of the BOP shall "ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months) under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community." See 18 U.S.C. § 3624(c)(1). The statute provides that those conditions may include confinement in a community correctional facility/community corrections center/residential re-entry center, all of which are commonly known as a "half-way house." The statute provides that the decision to confine a prisoner in a "half-way" house shall be made on an individual basis and shall be made in light of several factors, most of which are identified in 18 U.S.C. § 3621(b). See Miller v. Whitehead, 527 F.3d 752 (8th Cir. 2008) [BOP may consider factors in addition to those identified in 3621(b)]. The factors identified in 18 U.S.C. § 3621(b) are as follows:

> (1) the resources of the facility contemplated;

---

[5]"Both Evans and Pynes chiefly rely upon a simple logical argument. If the defendant had not been convicted of the original crime, he would not have been sentenced to supervised release, If he had not been been sentenced to supervised release, he would not have been under the conditions that he violated. Had he not violated the restrictions of his supervised release, the court could not have revoked his release status and returned him to custody. His final custody, therefore, is 'by virtue of' his original conviction." United States of America v. Patterson, 230 F.3d 1168 9th Cir. 2000).

11

(2) the nature and circumstances of the offense;

(3) the history and characteristics of the prisoner;

(4) any statement by the court that imposed the sentence-(A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or (B) recommending a type of penal or correctional facility as appropriate; and

(5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28."

In accordance with the Administrative Procedures Act ("APA"), 5 U.S.C. §§ 701 and 702, "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action with the meaning of a relevant statute is entitled to judicial review thereof," except to the extent that a statute precludes judicial review. In this case, the petitioner challenges the length of time the BOP has deemed appropriate for him in an RRC prior to his release. That decision is governed by 18 U.S.C. § 3624(c)(1). As previously noted, that section now provides:

> The Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility.

Because such a determination involves a decision regarding an inmate's place of imprisonment, in making a determination under § 3624(c), the Director must necessarily consider the five factors enumerated in 18 U.S.C. § 3621(b), as outlined previously in this Report. However, pursuant to 18 U.S.C. § 3625, Congress has specifically excluded subsections 3621 and 3624 from judicial review under the APA. See Davis v. Beeler, 966 F. Supp. 483, 489 (E.D. Ky. 1997). Section 3625 states: "[t]he provisions of section 554 and 555 and 701 through 706 of title 5, United States Code, do not apply to the making of any determination, decision, or order under this subchapter." Accordingly,

any substantive decision by the BOP with regard to the petitioner's eligibility for RRC placement, or the length of time in an RRC, is not reviewable by this Court. See Lyle v. Sivley, 805 F.Supp. 755, 760 (D.Ariz. 1992). However, even where judicial review under the APA is specifically excluded by statute, the court may still review whether there is clear evidence of unconstitutional conduct or evidence that the agency acted outside the scope of its authority. Webster v. Doe, 486 U.S. 592 (1988); Turner v. Safley, 482 U.S. 78, 84 (1987); Procunier v. Martinez, 416 U.S. 396, 405 (1974); Davis, 966 F. Supp. at 489.

It is well-established that an inmate has no constitutional right to be confined to a particular institution, Meachum v. Fano, 427 U.S. 215, 223 (1976), nor any "justifiable expectation" that he will be confined in a particular prison. Olim v. Waukinekona, 461 U.S. 238 (1983). Thus, because the petitioner has no protected liberty interest in being placed in an RRC prior to his release, and the decision whether to make such placement is clearly a matter of prison management within the knowledge and expertise of BOP officials, this Court cannot intervene in that decision unless a clear constitutional violation occurred.

In the instant case, the petitioner argues that although he was evaluated under the five factors, that evaluation was erroneous and incomplete. (Doc. 15, p. 2). Specifically, the petitioner challenges the findings under the third factor – the nature and characteristics of the prisoner. The petitioner argues that his review failed to consider that he has been in prison seven of the last ten years. He further argues that "[i]t is well established policy of the BOP that the longer a prisoner serves in prison, the longer his stay in a RRC facility should be in order to transition back to society as seamlessly as possibly." Id. Because the BOP did not consider his entire incarceration history in evaluating his RRC placement, the petitioner argues that the BOP abused its discretion by denying

13

him the requested maximum twelve moths allowed under the statute. This allegation does not state a clear constitutional violation.

Accordingly, the issue becomes whether the petitioner was properly reviewed for RRC placement utilizing the required five factors. In recommending the petitioner for RRC placement on December 6, 2011, staff specifically noted that: "(1) There are residential re-entry centers in the release area; (2) He is eligible for RRC, as there is no violence or other extenuating circumstance that would prelude placement; (3) He has an established residence, will secure employment; (4) VAW made no recommendation regarding RRC placement; and (5) There is no pertinent policy by the Sentencing Commission. Inmate Douglas is a good candidate for home confinement consideration, at his eligibility date. This is a RDAP referral. (Doc. 10-6, p. 1).

Accordingly, as required by the Second Chance Act, the petitioner's Unit Team made its review on an individual basis and considered the appropriate factors in recommending his placement. The fact that the petitioner's circumstances under that review could warrant two different interpretations of his need for RRC placement does not establish that the BOP was either derelict in its duties or wrong. Moreover, there is no evidence that the determination was arbitrary, capricious, or an abuse of discretion. Therefore, the petitioner cannot show that BOP officials violated the Second Chance Act.

## V. Recommendation

For the foregoing reasons, the undersigned recommends that the respondent's Motion to Dismiss or, for Summary Judgment (Doc. 18) be **GRANTED**, and the petitioner's § 2241 petition (Doc. 1) be **DENIED** and **DISMISSED with prejudice**.

Within fourteen (14) days after being served with a copy of this Report and

Recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections should also be submitted to the Honorable John Preston Bailey, United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to send a copy of this Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address as shown on the docket, and to counsel of record via electronic means.

**DATED:** September 12, 2011

/s/ David J. Joel
DAVID J. JOEL
UNITED STATES MAGISTRATE JUDGE